**Robert HAINSWORTH, Appellant,**

v.

**Crawford MARTIN, Secretary of the State of Texas, et al., Appellees.**

No. 11262.

Court of Civil Appeals of Texas.

Austin.

Jan. 20, 1965.

Rehearing Denied Feb. 3, 1965.

Robert W. Hainsworth, Houston, for appellant.

Waggoner Carr, Atty. Gen., John Reeves, Pat Bailey, Asst. Attys. Gen., Wallace Shropshire, County Atty., Joseph Darnell, Jr., Asst. County Atty., Austin, James E. Barlow, Criminal Dist. Atty., William J. Condon, Asst. Criminal Dist. Atty., San Antonio, for appellees.

PER CURIAM.

The appellant here and plaintiff below brought this suit asking for a declaratory judgment concerning the validity of the method of apportionment adopted by the Legislature in the Apportionment Act of 1961 [1] and asked that the county judges in those counties having two or more representatives in the State Legislature be enjoined from making returns of the elections for members of the Legislature in general and special elections and from performing other duties required by law in respect to such elections. The suit names the present Secretary of State, Attorney General and other public officials as defendants, these officials having been substituted as defendants from those previously holding these offices and having originally been made defendants when this suit was first filed.

It should be noted at the outset that appellant is not questioning here the validity of the number of representatives apportioned to the various counties of the State. Appellant's argument is that the Constitutions of the Federal and State governments require the State to divide those counties to which more than one representative is apportioned into separate and distinct legislative districts. Thus, instead of the candidates for the Legislature running at large for various places designated on the ballot, these candidates in multicandidate counties would be assigned districts from which they would run.

Judgment in the trial court was for the defendants and denied the injunctive relief sought.

Appellant is before this Court on five points of error. The first four allege violations of the Federal and State Constitutions which we will discuss in the order presented. The fifth point is the error of the court in denying the injunctive relief sought.

1. House Bill 349, Acts of the 57th Legislature, Articles 193 and 195, Vernon's Ann. Civil Statutes.

At the trial of this case, appellant called numerous witnesses who, for the most part, were duly elected members of the Legislature and from these witnesses elicited testimony to the effect that they had never during their lifetimes known of a negro to serve in the Texas Legislature; that they had known of instances where qualified negroes had offered themselves as candidates for the Legislature but that they had not been elected; that if districts were set up within the counties a negro or other member of a minority race would have a better chance of election; that there are 17 counties in the State of Texas that are entitled to two or more representatives.

Appellant presented detailed testimony as to the population of the abovementioned 17 counties, the number of whites and negroes in each and that the last negro to serve in the Texas Legislature was in the 1880's.

The crux of appellant's argument is that if the larger counties were divided into representative districts that are separate and distinct as to area and population, such a division would afford a legislative candidate who was a negro or who was from a minority racial group a fairer and more equal opportunity to be elected to the State Legislature. This contention is based on the argument that at the present time negroes and other minority groups live together in certain neighborhoods that presumably would be segregated into the voting districts desired.

■ Appellant presented a very able argument to this Court as to the merits of his case, however, his arguments are political in nature and their consideration should be by the legislative branch of the government and not the courts. For this reason and also for the other reasons hereinafter detailed, we must hold that the judgment of the trial court was correct.

■ Several recent opinions of the United States Supreme Court have foreclosed appellant's contention that the present method of selecting members of the Legislature in multimember counties is in violation of the 14th Amendment of the Federal Constitution.

In June of 1964, in an opinion styled Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, wherein the Supreme Court of the United States required the states to reapportion certain election districts so as to effect a more equal representation for equal numbers of people, multimember districts were specifically approved. This point was fortified on the same day that Sims was handed down by Lucas v. Forty-Fourth General Assembly of the State of Colorado, 377 U.S. 713, 84 S. Ct. 1459, 12 L.Ed.2d 632, wherein the court pointed out in Footnote 21, at 84 S.Ct. 1483:

"We do not intimate that apportionment schemes which provide for the at-large election of a number of legislators from a county, or any political subdivision, are constitutionally defective. Rather, we merely point out that there are certain aspects of electing legislators at large from a county as a whole that might well make the adoption of such a scheme undesirable to many voters residing in multimember counties."

Again in Sims the U. S. Supreme Court cited with approval the law from Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L. Ed.2d 481:

" * * * Wesberry clearly established that the fundamental principle of representative government in this country is one of equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within a State."

■ Thus under the law the vote of one citizen is equal to that of another "without regard to race, sex, economic status, or place of residence within a State."

■ Sections 26 and 26a of Article III of the Texas Constitution, Vernon's Ann. St.,[2] merely provide the manner in which members of the House of Representatives shall be apportioned among the several counties. See this Court's opinion in Miller v. James, Tex.Civ.App., 366 S.W.2d 118. These sections do not require the apportionment of districts within the counties.

■ Nor do we believe that Section 3 of Article 1 or Section 19 of Article 1 of the Texas Constitution [3] uphold appellant's contention for the same reasons given by the United States Supreme Court in Sims and Lucas cited above.

Inasmuch as we hold that appellant's contentions do not invalidate the reapportionment Act, we need not discuss the appellant's fourth point respecting the injunction sought.

The judgment of the trial court is affirmed.

Affirmed.

2. Section 26. "The members of the House of Representatives shall be apportioned among the several counties, according to the number of population in each, as nearly as may be, on a ratio obtained by dividing the population of the State, as ascertained by the most recent United States Census, by the number of members of which a House is composed; provided, that whenever a single county has sufficient population to be entitled to a Representative, such county shall be formed into a separate Representative District, and when two or more counties are required to make up the ratio of representation, such counties shall be contiguous to each other; and when any one county has more than sufficient population to be entitled to one or more Representatives, such Representative or Representatives shall be apportioned to such county, and for any surplus of population it may be joined in a Representative District with any other contiguous county or counties."
Section 26a. "Provided however, that no county shall be entitled to or have

under any apportionment more than seven (7) Representatives unless the population of such county shall exceed seven hundred thousand (700,000) people as ascertained by the most recent United States Census, in which event such county shall be entitled to one additional Representative for each one hundred thousand (100,000) population in excess of seven hundred thousand (700,000) population as shown by the latest United States Census; nor shall any district be created which would permit any county to have more than seven (7) Representatives except under the conditions set forth above."

3. Section 3. "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate emoluments, or privileges, but in consideration of public service."
Section 19. "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."